IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

ELVESTER TROTTER )
)
PLAINTIFF )          BIVENS TYPE CASE PURSUANT TO
)          TITLE 28 U.S.C. §1331, TITLE
VS. )          18 U.S.C. §§241,242 ET. SEG.
)
DEFENDANTS: )          CASE NUMBER_____
)
(1)  AUSA CARLOS B. CASTILLO )          [CIVIL RIGHTS COMPLAINT]

(2)  AUSA EDWARD SANCHEZ

(3)  DEA AGENT RICK MURPHY

(4)  ATTORNEY PAUL A. GERSON

(5)  ATTORNEY BRUCE R. LEHR

(6)  ATTORNEY GEORGE J. VILLA

(7)  ATTORNEY CURT D. OBRONT

(8)  ATTORNEY ANTHONY CARBONE

(9)  ALBERTO FUENTES

(10) METRO PCS CELL PHONE COMPANY

(11) CINGULAR WIRELESS CELL PHONE

(12) NEXTEL CELL PHONE COMPANY

(13) ATTORNEY MARISA TINKLER MENDEZ



C06-21981

MAGISTRATE JUDGE

_____

ELVESTER TROTTER
REG. NO. 69529-004
FEDERAL CORRECTIONAL INSTITUTION
MOHAWK UNIT B
POST OFFICE BOX 7007
MARIANNA, FL. 32447-7007

cat/div _Bivens  Dade_
Case # _1:06cv21931_
Judge _Lenard_  Mag _PAW_
Motn Ifp _____  Fee pd $ _$350.00_
Receipt # _GUY 554_

## TABLE OF CONTENTS                    PAGE i

LIST OF INTERESTED PARTIES                                    ii
SUMMARY OF THE CLAIMS                                         iii
STATEMENT OF JURISDICTION [¶1 - ¶5]                            1
CLAIM NUMBER ONE          [¶6 - ¶7]                           2
CLAIM NUMBER TWO          [¶8 - ¶9]                           3
CLAIM NUMBER THREE        [¶10 - ¶12]                         4
CLAIM NUMBER FOUR         [¶13 - ¶16]                         5
CLAIM NUMBER FIVE         [¶17 - ¶20]                         6
CLAIM NUMBER SIX          [¶21 - ¶27]                         7
CLAIM NUMBER SEVEN        [¶28 - ¶32]                        10
CLAIM NUMBER EIGHT        [¶33 - ¶35]                        12
CLAIM NUMBER NINE         [¶36 - ¶40]                        13
CLAIM NUMBER TEN          [¶41 - ¶47]                        15
CLAIM NUMBER ELEVEN       [¶48 - ¶49]                        18
CLAIM NUMBER TWELVE       [¶50 - ¶54]                        19
CLAIM NUMBER THIRTEEN     [¶55 - ¶60]                        21
CLAIM NUMBER FOURTEEN     [¶61 - ¶63]                        25
INJURY STATEMENT          [¶64 - ¶66]                        26
REQUEST FOR RELIEF        [¶67 - ¶69]                        27
VERIFICATION              [¶70]                              28
CERTIFICATE OF SERVICE    [¶71]                              28

### APPENDIX REFERENCE

| COMPLAINT PAGE # | PARAGRAPH # | APPENDIX PAGE # |
|---|---|---|
| 2 | 6,7 | A(1); A(9); A(10) |
| 3 | 8 | A(9); B(1-2) |
| 4 | 10, 11 | A(9); C(1-2) |
| 6 | 17; 20 | A(9); D(1-4) |
| 11 | 32 | E(1-4); G(1), |
| 12 | 34 | H(1-3) |
| 18 | 48; 49 | I(1); L(1-4) |
| 20 | 53 | J(1-2) |
| 22 | 58 | K(1) |
| 24 | 59; 60 | L(1-4); A(7-10) |

## LIST OF INTERESTED PARTIES

(1)  The Honorable Judge Patricia A. Seitz

(2)  Attorney Paul F.Gerson

(3)  AUSA Carlos B. Castillo

(4)  AUSA Edward Sanchez

(5)  DEA Agent Rick Murphy

(6)  Attorney Bruce R.Lehr

(7)  Attorney George J. Villa

(8)  Attorney Anthony Carbone

(9)  Alberto Fuentes

(10) Metro PCS Cell Phone Company

(11) Cingular Wireless Cell Phone Company

(12) Nextel Cell Phone Company

(13) Attorney Curt Obront

(14) Attorney Marisa Tinkler Mendez

(15) AUSA Jason Dimitris

(16) Florida Bar Association

(17) NAACP

(18) ACLU

(19) Attorney Roy Black,Esquire

## SUMMARY OF THE CLAIMS

**CLAIM NUMBER ONE:** Is the beginning of the GENERAL CONSPIRACIES involving AUSA CARLOS B. CASTILLO, AUSA EDWARD SANCHEZ and DEA AGENT RICK MURPHY. Title 28 USC §1331 ( BIVENS);Title 18 USC §241,242.

**CLAIM NUMBER TWO:** Plaintiff's Attorney Paul Gerson joined the General Conspiracies.

**CLAIM NUMBER THREE:** Continuation of General Conspiracies.

**CLAIM NUMBER FOUR:** Continuation of General Conspiracies.

**CLAIM NUMBER FIVE:** Continuation of General Conspiracies.

**CLAIM NUMBER SIX:** Alberto Fuentes joins the Conspiracy.

**CLAIM NUMBER SEVEN:** Attornies Bruce Lehr, George J. Villa, Curt Obront, and Anthony Carbone --- join the General Conspiracies by STIPULATION to Plaintiffs GUILT to the jury and therein became PROSECUTORS, along with AUSA Castillo and AUSA Sanchez.

**CLAIM NUMBER EIGHT:** Continuation of the General Conspiracies by Attorneys Gerson and Obront --- in acting as PROSECUTORS to plead Plaintiff guilty to transporting co-conspirators in his truck.

**CLAIM NUMBER NINE:** Attorney Gerson brings Investigator Fuentez into the overall conspiracy concerning the operation of a fork-lift.

**CLAIM NUMBER TEN:** Gerson uses deception to steal $5000 from Plaintiff's Son-inlaw. Wherein he did not tell them that the $5000 would become a part of his fee and had him sign a paper without forwarning that the $5000 would be confiscated upon conviction.

**CLAIM NUMBER ELEVEN:** Attorney Carbone, failed to refuse to act as Plaintiff's attorney while Mr. Gerson hid out in the bathroom during the Government's Closing Argument --- in violation of Plaintiff's constitutional right to his choice of his paid Attorney.

**CLAIM NUMBER TWELVE:** This claim involves the joining of the General Conspiricies by the following CELL PHONE COMPANIES: METRO PCS; CINGULAR WIRELESS; and NEXTELL, by failing to abide by the mandates of the Federal Rules of Evidence.

**CLAIM NUMBER THIRTEEN:** This claim concerns Attorney Mendez, as she joined the General Conspiracies by becoming a willfull accessary after the fact --- to cover up for the [EVIL] of the foregoing conspirators. She also caused unnecessary delays in the criminal case.

**CLAIM NUMBER FOURTEEN:** This claim incorporates the CORE ELEMENT of the conspiracy. The agreement to STIPULATE that Plaintiff was guilty of possessing the John Jackson Cell Phone and making all of the calls on it prior to Februray 24, 2003 which defrauded the jury.

## STATEMENT OF JURISDICTION

[¶1] This is a Title 28 U.S.C. §1331 Civil Complaint for equity of over $10,000. It is not brought for any purpose of attacking any Judgement. This case is predicated, primarily, upon a BIVENS ACTION. U.S. V. BIVENS 29 L Ed2d 619 for violations of Plaintiff's LIBERTY. BIVENS, at  91 S. Ct. 1999 at 2004 and  47 L Ed2d 975 at 981 §3 SOURCE OF PROTECTED LIBERTY: "that all men are endowed by their Creator with LIBERTY as one of the cardinal inalienable rights and protected by due process. Fifth and Sixth Amendments to the United States Consitution." Plaintiff, also invokes violations of Title 18 U.S.C. §241 and 242 Et. Seq, U.S. V. LANIER 137 L Ed2d 432 [HN 11a and 11b]. In conjunction with CONLEY V. GIBSON 2 L Ed2d 80 [HN 4].

[¶2] Plaintiff, also Claims that the United States Assistant Prosecuting Attorneys, set forth herein as Defendants and their Lead Case Agent do not have ABSOLUTE IMMUNITY for this action,  CARTER V. CITY OF PHILADELPHIA 181 F3d 339 [HN 17,18], BUCKLY V. FITZSIMMONS 125 L Ed2d 209 for fabricating evidence in the 'investigatory stage of the case'. Nor do they have Qualified immunities, as they set about to violate the law to violated Plaintiffs Civil Rights. FORRESTER V. WHITE 98 L Ed2d 555 and that they are subject to Criminal Liabilities and disbarment and sanctions. IMBLER V. PACHTMAN 47 L Ed2d 128 [HN 11]. FORRESTER V. WHITE 98 L Ed2d 555 [HN 8] NATURE OF ACTS!

[¶3] Plaintiff also claims a CONSPIRACY to violate his Civil Rights of the other Defendants, herein, for aiding and abetting and agreeing to deprive Plaintiff of his LIBERTY, by fraud, obstruction of justice perjury, subordinations of perjury, destruction of exculpatory material evidence and the suppression of material evidence that would prove their criminal actions to deprive Plaintiff of his LIBERTY and Civil Rights. MASTROIANNI V. BOWERS 160 F3d 671 [HN 4, 5, 6]. HARLOW V. FITZGERALD 73 L Ed2d 396. BURNS V. REED 114 L Ed2d 547.

[¶4] Plaintiff, is an American Citizen and resident of the State of Florida, as an [individual].

[¶5] Whereupon the Defendant's herein have caused the loss of money in defense of illegal criminal charges and have conspired to cause the loss of Plaintiffs LIBERTY and loss of equity, which is subject to liabilities of said Defendants as conspirators and in their individual capacities as set forth in the Complaint for compensation of monetary damages, or nothing. PAL KOW V. CSX 331 F. Supp 2D 594 [HN 6,].

1

## CLAIM NUMBER ONE:   [FIRST CAUSE OF ACTION]

,[¶6]   That A.U.S.A.'S CARLOS B. CASTILLO and EDWARD SANCHEZ along
with their LEAD CASE AGENT  --- DEA AGENT MURPHY, did agree and
confederate and conspire to aid and abet  one another to deprive
Plaintiff of his Constitutional Rights and his Civil Rights to
cause Plaintiff to lose his [LIBERTY] in a Criminal Prosecution
for violations of Federal Drug laws, knowing that Plaintiff was
not guilty of the charges and that they were supplanting Plaintiff
for another party that was actually guilty. This Criminal Case
was tried by the Honorable Judge  SEITZ in case number 06-2106-CIV
-SEITZ. Plaintiff presently has a Title 28 U.S.C. 2255 before Judge
SEITZ. Said 2255 and the exhibits thereto are the REFERENCE DOC-
MENTS to the case sub judice  Please see APPENDIX [A] which contains
the STATEMENT OF THE CASE[1] and FACTS and the GROUNDS brought in
Plaintiffs's 2255, which will set a foundation to this cause. [2]
[¶7]   This CLAIM and CAUSE OF ACTION, stems from GROUNDS II(4) and
II(5)[3] and II(10).[4] In these GROUNDS, it is established that PRIOR to
the INDICTMENT and during the 'INVESTIGATORY STAGES' Agent MURPHY
in agreement with the Prosecutors CARLOS B. CASTILL and EDWARD
SANCHEZ, did knowing fabricate false evidence that Plaintiff was
the [possessor and user of the John Jackson Cell Phone]. They knew
full well that the JOHN JACKSON CELL PHONE belonged to BRADLY BLUNT.
An unindicted KING PIN of the Drug Smuggling Operation.  They then
set about to construct a fraudulent CHART which was provided to the
jury; which falsely established that Plaintiff had made calls on the
JOHN JACKSON CELL PHONE. One of which was to ALONZO JACKSON, a
fellow co-conspirator who was aquitted in a second trial. Note, also
that the CHARTS were never AUTHENTICATED, nor was the Telephone
Records authenticated by any Custodian Of Records from the Phone
Companies  This non-athentication, permitted the construction of
the FRAUDULENT CHARTS which procured a corrupt conviction that
has deprived Plaintiff of his [LIBERTY] See JURISDICTIONAL STATEMENT.

---

/1 =APP-A(1)
/2 =APP-A(9)
/3 =APP-A(9)
/4 =APP-A(10)

## CLAIM NUMBER TWO:   [SECOND CAUSE OF ACTION]

[¶8]    This CLAIM is a continuation of the Conspiracy set forth in
CLAIM NUMBER ONE. In this CLAIM please refer to GROUND II(1) APP-A(9).
See also APP-B(1,2); which are EXHIBITS 17 and 18 from Plaintiffs
2255. These two pages are from the Trial Transcript. Please note the
highlighted lines on page APP-B(1). A.U.S.A. SANCHEZ, in his  opening
portion of the Government's closing arguments --- tells the Judge,
Jury and the Defense Attorneys (minus Plaintiff's Attorney, Mr.
Gerson (who is on an extended bathroom break) [THAT] the Government
has Phone Records which predate the Feburary 24th arrest of Plaintiff
and that these (non-existant) Phone records show that Plaintiff was
using the JOHN JACKSON CELL PHONE for [WEEKS] prior to the TAKE-
DOWN and arrests on the 24th of Feburary 2003. This was FRAUD. No
such PHONE RECORDS EXISTED and no such PHONE RECORDS were entered
into evidence in the case. Only the Phone records for the 24th of
Feburary were subpoenad. DEA Agent Murphy, was also fully aware that
no such Phone Records existed. He sat at the prosecutors Table as
the CASE AGENT. He was a party to the conspiracy to obstruct justice
and the presentation of patently FALSE MATERIAL EVIDENCE which caused
the conviction of Plaintiff and deprived him of his [LIBERTY]!
[¶9]    In addition to the Conspirators CARLOS B. CASTILLO and EDWARD
SANCHEZ and LEAD CASE AGENT MURPHY, Plaintiff asserts that his Trial
Attorney PAUL GERSON, joined into the above FRAUD UPON THE JURY and
the COURT and PLAINTIFF. Wherein Attorney Gerson, was fully aware
that no such Phone Records existed and to permit the Prosecutors to
deceive the jury --- he took an unrequested bathroom break from the
opening of the Government's closing arguments --- so that he would
not have to make any objections. However, Plaintiff told him upon
his return that the Prosecutor SANCHEZ had told the jury that they
had phone calls of Plaintiff going back weeks prior to the 24th of
Feburary that proved Plaintiff's absolute guilt. Mr. Gerson refused
to make any objections or request the Court Reporter to [READ BACK]
the [TESTIMONY] of Prosecutor SANCHEZ. This was no accident. It was
orchestrated by an agreement to introduce FALSE MATERIAL EVIDENCE
of [ABSOLUTE GUILT] to the jury to cause Plaintiff's loss of LIBERTY!
Mr. Gerson, was hell-bent upon getting another $30,000 for a Direct
Appeal. It was all he talked about  during breaks in the Trial. That
is why he deliberately [ABANDONED] Plaintiff.

3

## CLAIM NUMBER THREE: [THIRD CAUSE OF ACTION]

[¶10]   This CLAIM is a continuation of the CONSPIRACY, set forth
herein. In this CLAIM, Plaintiff establishes the SUPPRESSION OF
EXCULPATORY MATERIAL EVIDENCE to cause the loss of Plaintiff's
LIBERTY. SEE JURISDICTIONAL STATEMENT, and APP-A(9) GROUND II(5).
[¶11]   Co-defendant COLE became a primary WITNESS for the Government.
He was worked by DEA Agent MURPHY as well as SANCHEZ and  CASTILLO,
the Prosecutors in the criminal case referenced herein. Mr. COLE,
while on the witness stand told of his relationships with the KING-
PINS of his International Drug Smuggling Venture. He told of a Mr.
Carl MIles, who was his long time friend. He gave the Prosecutors
Mr. Miles' phone numbers and where he lived and where his business
was located in Miami/.* He also told how Mr. Miles orchestrated the
'OPERATION' along with a Mr. BIG MIKE who remained back in Jamaica.
He also told of a Mr. Bradly Blunt, who was a RING LEADER and the
man in charge of the 'unloading operation' under Mr. Miles. NONE
OF THESE PEOPLE WERE INDICTED! Mr. Cole, tripped up the Prosecutors
theory of the case when he told the jury that it was Bradly Blunt
who drove the WHITE VAN to the DISPOS ALL YARD. This was contrary
to the Prosecutions statments that Plaintiff drove Mr. Blunt in his
truck along with other 'unloaders'. He caught the Prosecutors lieing
to the jury about Plaintiff. He also knew that the Cell PHONE that
was attributed to Plaintiff, was actually BRADLY BLUNTS and he
testified that he saw Bradly Blunt using it! Thus the Prosecutors
allowed CARL MILES and BRADLY BLUNT and BIG MIKE to get away with
their Conspiracy to import mariajuna into the United States and
left them out of the case. They decided to trump up FALSE MATERIAL
EVIDENCE against Plaintiff to take the fall for BRADLY BLUNT. For
whatever reason they left these people un-indicted, it does not
matter. Maybe they were using them all along in a STING OPERATION.
Maybe they were going to use them in the future. No matter, they
agreed to keep them out of the case and to put an innocent man in
the place of BRADLY BLUNT to cause the loss of Plaintff's LIBERTY.
[¶12]   Attorney Paul Gerson, was a party to this suppression, as
he permitted it to transpire, right under his nose. He refused to
request FULL DISCLOSURE on these persons. He refused to use the
INVESTIGATOR Plaintiff paid for to find them. He joined the acts.
/* APP-C(1),(2)

4

## CLAIM NUMBER FOUR:  [FORTH CAUSE OF ACTION]

[¶13]  This CLAIM stems from GROUND II(6), and is a continuation of the conspiracy set forth herein. In this CLAIM, Plaintiff will show that the Government A.U.S.A'S CARLOS B. CASTILLO and EDWARD SANCHEZ and DEA AGENT RICK MURPHY, the LEAD CASE AGENT in the Criminal Case, referenced herein, [did] willfully and with full mens rea and scienter and with evil intent to deprive Plaintiff of his LIBERTY, withheld critical exculpatory material evidence. To wit:

[¶14]  Evidence concerning the [IDENTITY] of the 'WHITE VAN'; which was a material item used by the Government to connect Plaintiff to the Criminal Conspiracy of BIG MIKE, Carl Miles and Bradley Blunt. The 'WHITE VAN' was the vehicle which brought the 'tools' that were being used to remove the marijuana from the floor of the Container Trailer --- at the DISPOS-ALL Business. Government witness Cole, testified that it was Bradley Blunt that drove the 'WHITE VAN' to the DISPOS-ALL Yard. Inside were numerous 'RENTED TOOLS'. The legal question is: [WHO OWNED THE VAN]? The 'VIN NUMBERS' would have traced the VAN. The TAG, would have traced the user. Did the VAN belong to BIG MIKE or CARL MILES or BRADLEY BLUNT --- who the Government protected from prosecution by indictment? WHO RENTED THE TOOLS found in the 'WHITE VAN' and at the scene of the unloading? One of the items was a Cutting Torch with bottled acetylene -- which has to be registered upon filling. WHO FILLED IT UP? NONE of these items could be attributed to Plaintiff --- yet the [JURY] was left to believe that they could have been.

[¶15]  Then we have the 'FORK LIFT'. The Government gave it to the the DISPOS-ALL COMPANY. No one even tried to trace it. Who did it belong too? It was brought to the DISPOS-ALL YARD on the same day as the unloading was to be done, Feburary 24, 2003. Plaintiff could not be connected to any of the foregoing items. Because of that, the Government withheld the persons who were connected to these items, so as to leave the JURY without any factual evidence of the ex-culpatory nature of these items to Plaintiff.

[¶16]  Attorney Paul Gerson, was a party to this suppression, as he permitted it to transpire, right under his nose. He refused to request FULL DISCLOSURE of these items. He refused to use the INVESTIGATOR Plaintiff paid for. He joined the acts.

## CLAIM NUMBER FIVE: [FIFTH CAUSE OF ACTION]

[¶17]   This Claim stems from GROUND II(7) APP-A(9). See also the
STATEMENT OF JURISDICTION. This Claim establishes the agreement
between the Government Parties listed herein, including but not
limited to: A.U.S.A CARLOS B. CASTILLO, A.U.S.A EDWARD SANCHEZ
and DEA AGENT RICK MURPHY. Whereupon said Defendants and others
not presently known, [DESTROYED EXCULPATORY MATERIAL EVIDENCE] for
the purpose to cover-up their conspiracy to deprive Plaintiff of
his LIBERTY. First, they witheld the exculpatory evidence, then
lied about it via perjury and subordination of perjury. Next they
set about to destroy the evidence from being used in a NEW TRIAL
[IF] they got caught in thier evil acts.

[¶18]   As set forth in CLAIM NUMBER FOUR, the Government withheld
exculpatory material evidence. To wit: The owner/user of the 'WHITE
VAN'. The owner/renter of the TOOLS in the WHITE VAN. They gave
the FORK LIFT to the DISPOSALL Company. Today these items have been
corrupted for FORENSIC EXCULPATORY PURPOSES. They had gotten away
with suppressing the exculpatory evidence via a conspiracy between
themselves and Plaintiff's Trial Counsel and the cover-up of the
Court appointed Appeal Counsel. Thus, not only did they conspire to
deprive Plaintiff of his LIBERTY by means of FRAUD, PERJURY, SUB-
ORDINATION OF PERJURY, OBSTRUCTION OF JUSTICE and VIOLATIONS OF
PLAINTIFF'S CIVIL RIGHTS, they also set about to [COVER-UP] their
confederated handiwork by the collateral destruction of exculpatory
evidence.

[¶19]   In addition, they made DEALS with the [TRUE CONSPIRATORS]
for TIME SERVED SENTENCES and sent them back to Jamiaca on GET OUT
OF JAIL FREE PASSES. Plaintiff cannot even obtain these co-defendants
to validate the DEALS and the corruption of the witnesses to gain
the DEALS , by supplanting Plaintiff for their BOSS Bradly Blunt,
who the Government gave a FREE PASS TO,  by refusing to indict him.

[¶20]   Finally, APP-D(1) shows that Agent Murphy suppressed the
true records of the 'JOHN JACKSON' SUBSCRIBER and mixed it up with
the ALONZO JACKSON SUBSCRIBER to support his false CHART.
Attorney Paul Gerson assisted in this shamefull destruction of the
true records from the METRO PCS CELL PHONE PROVIDER. APP-D(2)(3)(4).

## CLAIM NUMBER SIX:   [SIXTH CAUSE OF ACTION]

[¶21]   In concert and in agreement to deprive Plaintiff of his
LIBERTY, Plaintiff's paid Attorney Paul Gerson aided  and abetted
the conspiracy between A.U.S.A. CARLOS B. CASTILLO and A.U.S.A.
EDWARD SANCHEZ and their Lead Case Agent, DEA AGENT RICK MURPHY.
Attorney Paul Gerson's actions and failure to represent Plaintiff
and his abandonment of Plaintiff were all designed to assist the
Government to win the Criminal case against Plaintiff, as the
record establishes beyound any doubt. Whereupon, Mr. Gerson worked
in unison with A.U.S.A. SANCHEZ to ABANDON Plaintiff during the
Opening of the Government's CLOSING ARGUMENT by A.U.S.A. EDWARD
SANCHEZ --- who took advantage of the abandonment and jumped right
on his argument to the jury concerning Plaintiff. During this
phase of the trial, A.U.S.A SANCHEZ commited FRAUD upon the jury
by claiming that Plaintiff had been in communication with other
co-consprators for weeks prior to the TAKE DOWN on the 24th of
Feburary, 2003. No such evidence was introduced as it did not
exist.

[¶22]   In addition to the foregoing abandonment, Mr. Gerson
actually STIPULATED that Plaintiff was the possessor of the 'JOHN
JACKSON' Cell phone  --- when no viable evidence existed that the
John Jackson Cell Phone was ever in Plaintiff possession. Where-
upon, this STIPULATION was a STIPULATION of Plaintiff's actual
[GUILT]! Thus Mr. Gerson --- PLEAD PLAINTIFF GUILTY --- to the
jury.

[¶23]   In addition, Mr. Gerson DEFRAUDED THE COURT, that Plaintiff
had a SPEECH IMPEDIMENT, and therefore could not take the WITNESS
STAND IN HIS OWN DEFENSE. This was a SHAM,  as Plaintiff has no
SPEECH IMPEDIMENT, but a mild SPEECH DEFICIENCY to articulate
certain multiple syllabled words. Plaintiff was quite able to
deny possessing the JOHN JACKSON CELL PHONE and to deny knowing
Perez or any of the other conspirators or that he operated the
Fork Lift or made any calls to any of the conspirators or drove
any of them anywhere. Substantive proof of this SHAM, is that the
Probation Officer interviewing Plaintiff for his PSI had no problem
whatsoever, in understanding Plaintiff and made no reference to
any SPEECH IMPEDIMENT!

[¶24]    Mr. Gerson, refused to attack the Government's use of 404(b)
'PRIOR CRIMINAL CONDUCT' to allow the Prosecution to DECEIVE the
jury  that Plaintiff was involved in a previous criminal venture,
identical in nature to the criminal case Plaintiff was adjudicated
guilty of. (The unloading of a Container Trailer full of marijuna,
along with Co-defendant's Bravo and Jackson.) Both Bravo and Jackson
were found NOT GUILTY. The Government Witness GARCED, was given a
get out of jail free pass, to contrive the false story of a prior
drug conspiracy. Even the Government's Lead Case Agent admitted
that their was not one iota of evidence to corroborate the made
up story of GARCED.  But, under the prenciples of law, a Prosecutor
can interject alleged prior criminal conduct to PREJUDICE  the JURY
that a Defendant is a BAD PERSON who has done this before. 404(b)
is one of the GREAT EVILS of the American Judicial System, as it
can so easily be abused ---- and it is generally contrived by a
co-defendant trying to 'cut a deal' to get less time for his own
criminal conduct. In the instant case, the Government Attorneys
and their Lead Case Agent had already corrupted the trial. To
illegally use a 404(b) was just par for the course. However, Mr.
Gerson was given documents and information that proved that your
Plaintiff was not even in the state of Florida during the alleged
unloading of another Trailer --- of which the other two alleged
persons who were supposed to assisted were found NOT GUILTY. That
means Plantiff was unloading this previous Trailer by himself!
Mr. Gerson refused to call witnesses to verify that Plaintiff
could not have been in two places at the same time. Plaintiff had
Motel Records and family that would have precluded the use of the
very prejudicial 404(b) concoction of the Prosecutions witness
Garced. Mr. Gerson, flatly refused to defend against the 404(b).
[¶25]    Mr. Gerson, constantly discussed an APPEAL of the case
during the trial. He was hell bent upon getting another $30,000.00
from Plaintiff for an Appeal and then on to the Supreme Court, for
additional fees. He sold out to the Prosecutors and assisted them
in every way he could to insure that Plaintiff would be found
guilty. He conspired with them in all of the corrupt conduct that
was utilized to deprive Plaintiff of his LIBERTY. What Trial
Attorney PLEADS HIS CLIENT GUILTY TO THE JURY and ABANDONS his
client during the 'Opening of the Prosecution's CLOSING ARGUMENTS?

Who also uses the INVESTIGATOR that Plaintiff paid for to, also
tell the JURY that Plaintiff, with his crippled hand --- could
have operated the FORK LIFT? One does not hire his own HANGMAN.
Gerson refused to make post facto objections to the FABRICATIONS
of Prosecutor SANCHEZ --- when he claimed he had Phone Records
for weeks before the arrest --- when Plaintiff told Gerson about
it after he decided to return to the trial. Mr. Gerson simply
stated that Plaintiff had misunderstood A.U.S.A. SANCHEZ. Well
the trial transcripts don't lie. Mr. Gerson was a conspirator and
aided Mr. SANCHEZ in the FRAUD UPON THE JURY.

[¶26]   Mr. Gerson, refused to call witnesses for the DEFENSE!
Plaintiff had a Medical Doctor that he had gone to see that would
have testifed that it would have been extremely dangerous for
Plaintiff to operate a FORK LIFT with Plaintiffs deformed left hand.
Plaintiff had Longshoremen that he had worked with for some 40
years on the Dock in Miami to testify that Plaintiff had never
operated a ForkLift and did not have an Permit to do so on the
Docks. Plaintiff's daughter was willing to act as an AID when
Plaintiff took the witness stand if anyone did not understand any
words that her father would have said on the witness stand.
Plaintiff could have called 50 people to testify how much Plaintiff
hated DRUG DEALERS. And had even been involved in having one beat
up and run out of his neighborhood when a Crack Cocaine Dealer
was trying to get the kids hooked in his neighborhood. Plaintiff
could have called character witnesses from his Church. Mr. Gerson
refused all of them. It was not his intent to win the case. It was
his intent to assist the Government in finding Plaintiff guilty
and to deprive Plaintiff of his LIBERTY to con Plaintiff and his
family out of more money. He conspired with the Government to
violate Plaintiffs constitutional rights and his civil rights,
as heretofore  set forth.

[¶27]   Finally, Mr. Gerson refused to SUBPEONA CELL PHONE RECORDS of
the CELL PHONE COMPANIES for [30 DAYS] prior to his arrest --- to
prove [NO CONNECTIONS TO HIM] --- [BUT CONNECTIONS TO OTHERS]!
Instead he permitted UNAUTHENICATED ALLEGED PHONE RECORDS to be
turned in a FRAUDULENT CHART to deceive the Court and the Jury!
Plus, under Rule 901, Mr. Gerson refused to require the Phone Companies
CUSTODIAN OF RECORDS to [VERIFY and VALIDATE the records], as any
competant Criminal Trial Attorney would automatically do!

## CLAIM NUMBER SEVEN:  [SEVENTH CAUSE OF ACTION]

[¶28]   That the following listed Defense Attorneys, did agree
and willfully and knowingly and with full mens rea and scienter,
intentionally conspire together and to aid and abet each other
to deprive Plaintiff of his LIBERTY:

Paul F. Gerson, who represented Plaintiff Elvester Trotter.

Bruce H. Lehr, who represented Defendant Bravo.

George J. Vila, who represented Defendant Steele.

Anthoney Carbone, who represented Defendant Dennis.

Curt D. Obront, who represented Alonzo Jackson.

[¶29]    Whereupon,the foregoing [FIVE] Defense Attorneys that
were a party to Plaintiff's Criminal Trial [STIPULATED] that the
'CELL PHONE RECORDS and MAKESHIFT CHART'(THE 'MURPHY CHART')
were [FACTUAL  MATERIAL EVIDENCE]. Wherein, by so doing [ALL] of
these Defense Attorneys [PLEAD PLAINTIFF GUILTY TO POSSESSING THE
JOHN JACKSON CELL PHONE AND THE PARTY RESPONSIBLE FOR ALL OF THE
CALLS BETWEEN THE JOHN JACKSON CELL PHONE AND THE CODEFENDANTS,]
notwithstanding that Defendant's BRAVO, STEELE and Alonzo Jackson
were found [INNOCENT by juries]!

[¶30]    Wherein, in conjunction with CLAIM NUMBER SIX, the fore-
going Defense Attorneys [ACTED AS PROSECUTORS AGAINST PLAINTIFF!!!]
See U.S. V. MAYFIELD  189 F3d 895: To wit:

> "Codefendants' trials should have been severed where
> they had mutually exclusive defenses and district
> court permitted codefendants' counsel free rein to
> introduce evidence against defendant and act as an
> **additional prosecutor!"**

[¶31]    Each of the foregoing Attorneys knew that the JUDGE was
going to INSTRUCT THE JURY, that "STIPULATED FACTUAL EVIDENCE
--- did not have to be debated,as it was an accepted fact." Thus
the STIPULATIONS by the foregoing Attorneys PLEAD PLAINTIFF GUILTY
of the STIPULATED FACT, that it was Plaintiff who possessed the
JOHN JACKSON CELL PHONE and it was Plaintiff who made the calls
referenced by the 'MURPHY CHART', which they STIPULATED into
evidence.  This was not a mere accident.It was planed and con-
trived and put into action by Attorney Curt D. Obront, who appointed
himself -as-  the LEAD COUNSEL of the [TEAM], as Attorney Paul F.
Gerson, admitted to, and deprived Plaintiff of his CIVIL RIGHTS!

[¶32]   As referenced in [ 30], CLAIM NUMBER SIX @[ 23] please note the 'NATURE' of the Paragraph, in that it consists of the  SHAM of Plaintiff's Attorney, Paul Gerson setting the groundwork for all of the FIVE DEFENSE ATTORNEYS, supra, to be able to [STIPULATE] to Plaintiff being in possession of the JOHN JACKSON CELL PHONE. You see, it is very simple logic --- that [IF] Plaintiff had not been flimflamed out of his right to testify in his own defense, then these FIVE DEFENSE ATTORNEYS, could not have STIPULATED to the admittance of the Fraudulent 'MURPHY CHART'. WHY? Because their would have been a [CONFLICT] to Plaintiff's testimony of not possessing the Cell Phone or making any calls on it. Plaintiff's Attorney, Paul Gerson, could not STIPULATE that Plaintiff was the possessor of the John Jackson Cell Phone --- or --- made calls on it [IF] Plaintiff TESTIFIED ON THE WITNESS STAND UNDER OATH THAT HE DID NOT POSSESS THE JOHN JACKSON CELL PHONE, NOR MAKE CALLS ON IT. Thus, the nexus to all of the Defense Attorneys conspiring to PLEAD PLAINTIFF GUILTY and act as additional PROS- ECUTORS, depended upon **[KEEPING PLAINTIFF OFF OF THE WITNESS STAND]!** This is why Plaintiff's Attorney [DEFRAUDED THE JUDGE] and lied that Plaintiff had a 'speech impediment and the jury could not comprehend him, because of it. They had to conspire to DEFRAUD the Federal Judge --- in order to act as PROSECUTORS against Plaintiff. Thus their **EVIL**  even encompassed [DEFRAUDING A FEDERAL JUDGE] as part of their conspiracy to deprive Plaintiff of his LIBERTY.  Please see APP-E(1,4) wherein the Chief Medical Doctor, Dr. A.Guzman advised that Plaintiff has no SPEECH IMPEDIMENT! Please see also APP-F(PLAINTIFF'S SWORN AFFIDAVIT submitted in his Criminal Case) Note that the AFFIDAVIT consists of  TEN POINTS that Plaintiff would have tesified to in his criminal Trial, had not this conspiracy taken place  to preclude him from his consitutional Right to 'Testify in his own DEFENSE!'  Please see APP-G(1) Wherein Mr. Gerson lies to the Judge to insure that Plaintiff will be denied his right to Testify in his own Defense. This constituted the primary 'overt act' of the conspiracy to permit the foregoing FIVE Defense Attorneys to [act] as PROSECUTORS, to insure that Plaintiff would be wrongly  convicted of a crime he is FACTUALLY and  ACTUALLY INNOCENT OF!

11

## CLAIM NUMBER EIGHT:  [EIGHTH CAUSE OF ACTION]

[¶33]   In conjunction with CLAIM NUMBER SEVEN, we now have a sequentiary CONSPIRACY --- between Plaintiff's Trial Attorney and Co-defendant Alonzo Jacksons' Trial Attorney to perpetuate the intent to deprive plaintiff of his LIBERTY.

[¶34]   In CLAIM NUMBER SEVEN, [ALL] of the Defense Attorneys conspired to PLEAD Plaintiff, guilty via the STIPULATION that Plaintiff was in possession of the 'John Jackson' Cell Phone and that the calls made on that phone were, matter of fact, made by Plaintiff. In this CLAIM, Plaintiff's Attorney Paul Gerson and Alonzo Jacksons Attorney Curt Obront, conspired together to PLEAD Plaintiff GUILTY of picking up some of the other co-defendants in his Red Truck and transporting them to the Dispos All to assist in the unloading of the Trailer with the Mariajuna in it. In addition, Mr. Obront solidifies that Plaintiff had called Alonzo Jackson on the 'John Jackson Cell phone. See APP-H(1)(2)(3)

[¶35] Plaintiff told his Attorney Gerson --- that he did NOT PICK UP ANYONE IN HIS TRUCK AND TAKE THEM TO THE DISPOSAL YARD. That all they had to do was [FINGERPRINT] his truck! Mr. Gerson refused to cause the truck to be fingerprinted.  But that was not his worst wrong act concerning the transportation of these other codefendants. He permitted Obront to tell the jury that it was a FACT that Plaintiff did it and that Plaintiff called Alonzo Jackson on the 'John Jackson Cell Phone! This expanded the STIPULATIONS of all of the Attorneys into a SPECIFIC allegation that Plaintiff was guilty and his Client Alonzo Jackson was merely an innocent rider in Plaintiff's truck. Thus, Obront used Plaintiff as the culprit to prove Plaintiff guilty and his own Client innocent. He, once again became a **PROSECUTOR AGAINST PLAINTIFF**, as he did in CLAIM NUMBER SEVEN. He built upon the STIPULATIONS and used them as a means to place all of the blame upon Plaintiff and to place his Client Alonzo Jackson as a mere unknowing party to Plaintiffs CRIMINAL CONSPIRACY. It was not possible for Plaintiff to win his case, as Obront had used Plaintiff to win his Client's case based upon the foundation of the "STIPULATIONS OF GUILT" of Plaintiff by [ALL] of the Defense Attorneys. Mr. Gerson, was a knowing conspirator in this plot to convict Plaintiff, as he permitted it to transpire!

## CLAIM NUMBER NINE : [ NINTH CAUSE OF ACTION]

[¶ 36]   In Plaintiff's criminal trial, it was alleged that it was
Plaintiff who operated the FORK LIFT to pry the floor up from inside
the Container Traler. Plantff worked the Docks for some 42 years
in Miami. He was legally precluded from operating a FORKLIFT, as
he has a deformed left hand. Plaintiff, has never operated a FORK
LIFT in his entire life. Plaintiff went to a Doctor for an EXPERT
OPINION as to Plaintiff's inability to operate a FORKLIFT. The
Doctor told Plaintiff that it would be very dangerous for Plaintiff
to attempt to operate a FORKLIFT. Plaintiff's Attorney, Mr. Gerson
refused to call the Doctor as an EXPERT WITNESS for the Defense.
Instead Mr. Gerson called an Investigator that Plaintiff had paid
--- to investigate the case. Mr. Fuentes , was hired for various
purposes. None of which were of any great use at the trial. However,
not being an EXPERT in the operations of FORKLIFTS and such this
man testified that his investigations showed that Plaintiff could
operate a FORKLIFT and could have operated the FORKLIFT to pry
the flooring up from inside the Container Trailer. Bascially he
joined with Mr. Gerson to PLEAD PLAINTIFF GUILTY, his testimony
was incriminating and prejudicial to Plaintiff. Thus he joined
into the conspiracy to deprive Plaintiff of his LIBERTY. He was
not an expert and his PERSONAL OPINION of subject matter he had
absolutely no experince in or qualifications to venture an opinion
about, was prejudicial as the jury was fully aware that he was
hired by Mr. Gerson. This simply goes along with Mr. Gerson's
Pleading Plaintiff guilty to possession and use of the JOHN JACKSON
CELL PHONE and the abandonment of Mr. Gerson during the Government's
Opening Statements of the Closing Argument process. Mr. Alberto Fuentes
was supposed to get 'finger prints' off the Fork Lift for a DAUBERT
HEARING. Instead he infringed upon the AMERICANS DISABILITY ACT 42
U.S.C.A. §12132, and 29 USCA § 794, by conspiring against a CRIPPLE
who was hired under a DISABILITY CLAUSE to work the Docks under the
LONGSHOREMANS UNION! In Violation of Title 18 USC § 241and 242!
[¶37]   Whereupon, all of the DEFENDANTS, set forth herein, knowingly
joined into this conspiratorial act, knowing full well that
Plaintiff did not and could not operate a FORKLIFT,and that
Plaintiff's finger prints were not on the Fork Lift! See IMBLER V.
PACHTMAN 47 L Ed 2d [HN 11].

[¶38]   The Defendants chose Plaintiff because, Plaintiff is an
AFRO AMERICAN --- who had limited education and was unable to
learn to speak multiple syllabled words accurately. Please see
APP-M(1) Plaintiff's Diploma from the Education Department at the
Federal Correctional Institution, Marianna, Florida dated
In addition, Plaintiff was born with a CRIPPLED LEFT HAND. Basically,
he was destined to be a DISABLED individual on Government Relief.
However, fate had a different role for Plaintiff. By the grace of
God, he was taken in by the LONGSHOREMANS UNION and given tasks
that he could do with 'one good hand'. He eventually worked him-
self into a Supervisors Position, with training from his benifactors.
Plaintiff worked over 40 years on the Docks in Miami. A Church
going man fully aware of how fortunate he was in life.
[¶39]   The Defendant's, like Jackals on a wounded pray, saw
Plaintiff as a perfect SCAPE GOAT, to permit Carl Miles and
Bradly Blunt to go unindicted and to build a fabricated case to
put Plaintiff in prison.  The OBJECTS of their conspiracies are
plain in the records. Their goals, psychologies, ethics, morals
and such attributes are not the issue. Their 'ACTS' against Plaintiff
cannot go without sanctions. Plaintiff's health has deteriorated
exponentially from his incarceration and lack of adequate medical
attention. His physical well being has deteriorated from the
desuetude of prison life. His mental state has declined as his
being innocent of the alleged crime he is in prison for, as it
is not possible to mentally eviscerate the agony of being away from
his beloved family, and wrongly be accused and corruptly incar-
cerated and not expecting to live to see freedom again.

[¶40]   Plaintiff asserts that because he is an AFRO-AMERICAN,
with a limited education and a cripple, that the [ENTITIES]
of both State and Conspirators, have DISCRIMINATED AGAINST
Plaintiff. They [PICKED] Plaintiff as a SCAPE GOAT, do to the
disabilities of Plaintiff and his RACE and his being a Cripple.
An EVIL abuse of POWER to put an innocent man in prison by the
corruption of Private Attorneys and Government Agents, because
they used Plaintiff as their [MARK], do to his Handicaps.

14

## CLAIM NUMBER TEN :[TENTH CAUSE OF ACTION]

[¶41]   This CLAIM is directed towards Plaintiff's [HIRED COUNSEL] Mr. Gerson, only. Whereupon, this CLAIM is comprised of TWO ACTS by Mr. Gerson that infringed upon Plaintiff's ability to afford and obtain a NON-COURT-APPOINTED ATTORNEY, for his Direct Appeal.

[¶42]   This FIRST OVERT ACT which deprived Plaintiff of [FUNDS] from which to hire his own attorney for his Direct Appeal is the 'THEFT BY FRAUD' of the $5000.00 that was put up by Plaintiff's daughter and son-in-law, for Plaintiff's PRE-TRIAL RELEASE on BOND! Plaintiff's daughter put up the $5000.00 and was the 'SIGNATORY' on the BOND. She was the [ONLY] legal person who could request the return of this $5000.00. No one, including Plaintiff ever signed any release of this $5000.00 to Mr. Gerson. However, it has come to everyones attention that Mr. Gerson 'somehow' was able to fraudulently take possession of this $5000.00 belonging Plaintiff's Son In Law, who was never told that any of this $5000.00 would in any way become the property of Mr. Gerson. It was simply stolen.

[¶43]   Mrs. Colvin, was under the impression that the $5000.00 would be returned to her after Plaintiff was denied his Direct Appeal and no longer eligable for any type of BOND. Recently Plaintiff has filed a Title 28 USC Section 2255 Motion and the Paralegals and the retired Attorney - who supervises the Para-legals, explained that Mrs. Colvin could have gotten her money returned to her once Plaintiff was denied an Appeal Bond. That has been almost three years ago. In any event Mr. Gerson, has somehow managed to obtain the $5000.00 without permission or any contract or any release of the funds from the SIGNATORY, Mrs.  Colvin. This was a CRIMINAL ACT. It was theft by fraud upon the Federal Court and Clerk to have these funds sent to Mr. Gerson. It is very simple. He stole the money.

[¶44]   The loss of this $5000.00 was contributory to Plaintiff not having adequate funds to hire a competant attorney to do his Direct Appeal. Mr. Gerson was very upset that he was not going to be paid an additional $25,000 to do the Direct Appeal. However, after his worthless representation at trial and sentencing Plaintiff fired him. Whereupon at no time did Plaintiff grant Mr. Gerson any rights to the $5000,00 belonging to his daughter.

[¶45]    The SECOND OVERT ACT to impede Plaintiff from having the
funds to hire an attorney for his direct appeal, was the refusal
of Mr. Gerson to argue at Plaintiff's sentencing that he did not
meet the criteria for a MANAGERIAL ROLE ENHANCEMENT. Mr. Gerson
told Plaintiff that it was 'clear cut' that Plaintiff was one of
the Managers and organizers, according to the language  of the
GUIDELINES and that it would have to be argued on Direct Appeal.
He refused to to bring it up at the SENTENCING. This caused
Plaintiff to have to hire Mr. Rogers and pay him an additional
$4500.00 to go to Plaintiff's sentencing and argue this point of
law. Well, Mr. Rogers argued the Enhancement Issue and won. The
Court agreed that the evidence did not support that Plaintiff
was an Manager or Organizer. The Court declined to impose the
3 point enhancement. This additional $4500.00 was earmarked for
an appeal attorney. It was evident by everyone who sat through the
trial, that Mr. Gerson had sold plaintiff out --- to get paid for
a 'direct appeal!' Plaintiff's daughter even told Mr. Gerson that
he deliberately lost the case. She surely would not have signed
her $5000.00 over to this thief and fraud.
[¶46]    The foregoing two DELIBERATE ACTS of Mr. Gerson violated
Plaintiffs civil rights. He stole Plaintiff's daughters funds
that she would have put towards hiring a qualified direct appeal
attorney. Secondly, Mr. Gerson wanted the Mangerial Role put on
Plaintiff, so that he could charge more money as the sentence would
have been much greater. The greater the sentence the more money
can be charged --- as it boils down to dollars for freedom! Mr.
Gerson's flat out refusal required Plaintiff to have to hire Mr.
Rogers to fight the enhancement issue --- which the court agreed
upon. That was a loss of another $4500.00. Thus, almost $10,000
was lost that would have gone towards hiring an Appeal Attorney
worth his salt!
[¶47]    Mr. Gerson, knowing that Plaintiff had only a 4th grade
education, knew he could scam Plaintiff out of as much money as
possible. Mr. Gerson also knew that Plaintiff was handicapped and
had a speech imperfection problem with multiple syllabled words.
He also took into account that Plaintiff was a Black Man, and
used the RACE CARD, to play the entire family in his scam to
deprive Plaintiff of his LIBERTY, unless he paid the piper! Mr. Gerson

then set about to cause Plaintiff additional suffering and mental
anguish by having Plaintiff brought back to Miami so that Plaintiff
would have to officially FIRE him and Mr. Roberts from any further
representaions. This was completely unnecessary, as it is done
by mail in every other instance except a very select few situations.
This was not one of them. Plaintiff had told Mr. Gerson that he did
not want him on Plaintiff's case, as he had sold Plaintiff out and
that he would not be doing the Direct Appeal. Nor would Mr. Rogers
do it, as he wanted an immediate $25,000.00 that Plaintiff could
not come up with. Gerson knew that Plaintiff would have to suffer
additional months in county jails     and in the TORTURE CHAMBERS
of the Atlanta Holdover Facility. Wherein four men are put in a
small room for 23 hours a day. Two have to sleep on the floor, and
one under the bed. The other right next to the toilet. Dogs are
treated better. It is pure hell. Plaintiff became to suffer pains
in his stomach and his health began to diminish rapidly without
any medical attention. In holdover facilities only emergency
medical attention is avialable. Plaintiff spent an additonal
**SEVEN MONTHS** in holdover jails --- just so Gerson could get another
chance to talk Plaintiff into allowing him to do Plaintiff's Direct
Appeal, along with Mr. Roberts. This was 100% unnecessary and
caused Plaintiff extreme mental and medical duress. It was over
a year before the medical  Department at Estell F.C.I. was able to
validate that Plaintiff was in very bad health with Prostrate
problems and blood problems and depleted in nutriants and
required vitamins.This unnecessary suffering was caused by Mr.
Gerson's GREED to try once again to get Plaintiff to do his Direct
Appeal --- so he could cover up for the corruption in the trial
and that he had abandoned Plaintiff and Plead Plaintiff guilty to
the jury. He even went so far as to guarntee an Appeal Bond. All
lies. Whereupon Plaintiff asserts that this 'additional HELL'
that Gerson orchestrated to get Plaintiff back before the court to
simply remove him and appoint a Public Defender was a continuation
of the violations of Plaintiffs rights. Gerson knew that Plaintiff
was a Cripple and not able to use his left hand. He wanted
Plaintiff sleeping on floors in a toilet sized room with three
other men. He wanted Plaintiff 'broken' and willing to listen to
more of his lies. That is the true character of this man that a
CIVIL JURY WILL GET TO SEE!

17

## CLAIM NUMBER ELEVEN:   [ELEVENTH CAUSE OF ACTION]

[¶48]    This CLAIM is against Attorney CARBONE, who represented Plaintiff's Co-defendant Dennis, in Plaintiff's Criminal Trial. However, it also emcompasses the ILLEGAL APPOINTMENT of Mr. Carbone to represent Plaintiff during the Government's Opening portion of their CLOSING ARGUMENTS, in the Criminal Trial. Because Judge Seitz, has ABSOLUTE IMMUNITY, she is not being added to this Complaint. Nonetheless, her illegal appointment of Mr. Carbone to represent Plaintiff --- during the abandonment of Plaintiff's hired Attorney Mr. Gerson --- was an act of BIAS in favor of the Prosecution. The intent to cause Plaintiff harm and prejudice by the illegal appointment of Mr. Carbone, is the subject of this Claim. Plaintiff, in no way presumes or claims that Judge Seitz joined into the CONSPIRAC(IES) set forth in this Complaint. With that said, Plaintiff will CLAIM, that Mr. Carbone violated Plaintiff's SIXTH AMENDMENT RIGHTS and his CIVIL RIGHTS by accepting the task of representing Plaintiff during the time frame that Mr. Gerson was in the bathroom during the Opening of the Closing Arguments of the Government. See APP-I(1)

[¶49]  It has been a longstanding RULE OF LAW, that a Criminal Defendant must be given the right to his 'CHOICE OF COUNSEL'. However, the Supreme Court of the United States recently made it quite plain that this right is MANDATORY. See U.S. V. GONZALEZ LOPEZ U.S. SEE: APP-L(1,4)     Mr. Carbone, knew full well that he could not make any objections for Plaintiff --- if they in any way infringed upon the defense of his own client, Mr. Dennis. Thus, he should have [REFUSED] to [STAND IN] for Plaintiff's PAID ATTORNEY, Mr. Gerson. According to U.S. V. GONZALEZ-LOPEZ, supra, Plaintiff has no burden to show any prejudice from the usurpation of his own paid attorney. It is automatic that it deprived plaintiff of his 6th Amendment Right to Counsel, prima facie, plain in the record, de jure! This usurpation also violated Plaintiff's CIVIL RIGHTS, as they were taking advantage of a Black Man with a Limited Education and with a crippled hand as a disabled person. Mr. Carbone, knew that he could not object to the STIPULATIONS of Gerson --- which was a requirement of law when the Prosecution defrauded the jury with the MURPHY CHART! To do so, would have prejuduced his own client. Point Blank!

## CLAIM NUMBER TWELVE: [TWELFTH CAUSE OF ACTION]

**[¶50]**   This CLAIM is against the following CELL PHONE COMPANIES:
(1) METRO PCS (The JOHN JACKSON CELL PHONE attributed to Mr. TROTTER)
(2) METRO PCS (attributed to Mr. Alonzo Jackson)
(3) CINGULAR WIRELESS (attributed to Mr. Dennis)
(4) NEXTEL (attributed to Mr. Perez)
(5) NEXTEL (attributed to Mr. Garced)
NOTE: ATTORNEYS OF RECORD:
(1) For Mr. Trotter: Mr. Paul F. Gerson.
(2) For Mr. Alonzo Jackson: Mr. Curt D. Obront.
(3) For Mr. Dennis: Mr. Anthoney Carbone.
(4) For Mr. Perez:
(5) For Mr. Garced:
NOTE: CO-OPERATING CO-DEFENDANTS:
(4) Mr. Perez.
(5) Mr. Garced.
NOTE: CO-DEFENDANT BRAVO was represented by Mr. LEHR, but the
Phone Records are not a part of this case , as Mr. Bravo was
acquited and no phone connections were ever alleged between
Mr. Trotter and Mr. Bravo.
**[¶51]**   This CLAIM, arises from the NEGLIGENCE of the foregoing
CELL PHONE COMPANIES to provide LEGAL AUTHENTICATION of the
[FULL RECORDS] of the [PERSONS] who:
(a) Subscribed to the Cell Phone.
(b) Paid the bills and by what means.
(c) The addresses of the subscribers.
(d) An AFFIDAVIT of AUTHENTICITY by the CERTIFIED CUSTODIAN of
the foregoing CELL PHONE RECORDS, as the law requires pursuant to
Federal Rules of Evidence 901(a) See U.S. PELULLO 964 F2d 193 [HN 6
Criminal Law]. Furthermore in Rule 902(11) the CUSTODIAN [**must**]
CERTIFY THE RECORDS to even 'self-authentication'. See BRASWELL
V. U.S. 101 L Ed2d 98 and U.S. V. LAURANS 857 F2d 529 [HN 14
OBSTRUCTION OF JUSTICE]. Whereupon to withold the FULL PHONE RECORDS
of the 'subscribers' and not presenting them with a NOTARIZED
CERTIFICATION OF AUTHENTICITY, constitutes 'obstruction of justice'.
Whereupon the 'obstruction of justice by the CUSTODIANS of the
above listed CELL PHONE COMPANIES permitted  FRAUD in a Criminal

trial against Plaintiff, in violation of the Federal Rules  of
Evidence Rule 803(8). See U.S. V. SPANO 421 F.3d 599 [HN 5]
'Original Documents Rule'. See also BEECH AIRCRAFT V. RAINY 102 L
Ed2d 445 [HN 6] and U.S. V. EDWARDS 224 F3d 1141 [HN 9].
[¶52]   The failure of the CUSTODIANS of the PHONE RECORDS of the
foregoing CELL PHONE COMPANIES to 'produce' the [FULL RECORDS]
of the (a) Subscriber(s); (b) Who paid the bills and by what means;
(c) The address(es) of the subscribers and (d) a CERTIFICATE OF
AUTHENTICITY of said 'records' --- violated Plaintiff's constitu-
tion rights, as it affected his criminal trial and caused FALSE
MATERIAL EVIDENCE to be utilized --- that would not have been
used had the PHONE COMPANIES, followed the RULES OF LAW! Wherein,
these RULES OF LAW are such as to establish [FOUNDATIONS] of
material facts that are plain in the records which are in the
control and possession of the CUSTODIANS.  When CUSTODIANS breech
the RULES OF LAW, they become liable in a Civil Action --- and may
even be subject to criminal prosecution --- if they acted in
bad faith and evil intent to obstruct justice by withholding
exculpatory material evidence, as in the instant case.
[¶53]   Primarily it is METRO PCS, who violated the foregoing
Rules of Law, in that they withheld the FULL RECORDS on the
'JOHN JACKSON CELL PHONE'. Whereupon, in Plaintiff's Criminal
Trial DEA AGENT MURPHY, refused to reveal [WHO] 'JOHN JACKSON WAS!
As heretofore set forth from (a) to (d), this information would
have produced the [ACTUAL PERSON(s)] who subscribed to the phone
and paid the bills and by what means and where they lived and
so on. See APP-J(1),(2)
[¶54]   Whereupon the CELL PHONE COMPANIES, especially METRO PCS
either 'conspired' with DEA AGENT MURPHY to withhold critical
material evidence --- or they were negligent in following the
Federal Rules of Evidence, as heretofore set forth. The CELL
PHONE COMPANIES, herein --- were fully aware that their records
were being requested for a criminal prosecution. They were
required to insure AUTHENTICATION of the FULL RECORDS and not
piecemeal and withhold the material facts pursut to (a)-(d)
set forth above. By so doing they violated Plaintiff's CIVIL
RIGHTS and his Constitutional Rights, denying  Plaintiff the means
to [IMPEACH] the evidence. PENGUIN BOOKS V. NEW CHURCH 262 F.Supp
2d [HN 9].

### CLAIM NUMBER THIRTEEN:   [THIRTEENTH CAUSE OF ACTION]

[¶55]    This CLAIM is against Plaintiff's Court Appointed Direct
Appeal Attorney, Ms. MARISA TINKLER MENDEZ. Whereupon Ms. Mendez
did join into the foregoing Conspiracies by being an **ACCESSORY
AFTER THE FACT** to [COVER UP FOR THE AGREEMENT OF THE OTHER
DEFENDANTS, HEREIN, TO DEPRIVE PLAINTIFF OF HIS LIBERTY]. The
'evidence' of this joining of the conspiracy --- after the fact,
is established by the wanton disregard of consititutional ISSUES
that were ripe for review by the higher courts, in Plaintiffs
Criminal Case. Whereupon, Ms. Mendez, refused to bring [ANY]
'viable' ISSUES, that stood any chance to win the case, and
even flim flamed aditional funds on the 'dole' to do a frivolous
BOOKER ISSUE --- to cause plaintiff addtional time in prison
while that useless ISSUE was going through the courts. Ms. Mendez
even went to the Supreme Court with the frivolous BOOKER ISSUE.
This act, literally made a mockery of the American Judicial System!
[¶56]    The Supreme Court in MASSARO 155 L Ed2d 714, made it
quite clear that ISSUES that are PLAIN IN THE RECORD --- of
ineffective assistance of Trial Counsel [MUST] be brought on
Direct Appeal. This is also true when there is FOUL PLAY used
to convict a defendant. The foregoing CLAIMS plainly establish
FOUL PLAY and a CONSPIRACY to deprive Plaintiff of his LIBERTY!
Ms. Mendez was advised of these foul acts in a Pro Se Brief.
She refused to adopt them or to even listen to any ISSUES that
suggested ineffective representation or improprieties. Instead
she brought the <u>following four ISSUES</u> that the Government quickly
and easily overcome via stare decisis and common sense.

ISSUE I. INSUFFICIENT EVIDENCE TO CONVICT TROTTER OF CONSPIRACY
              AND POSSESSION OF MARIJUANA WITH INTENT TO DISTRIBUTE.
NOTE: This ISSUE, is the hardest issue to win a case on. Plus,
[ALL] of the attorneys PLEAD PLAINTIFF GUILTY TO THE JURY --- so
their was no way this ISSUE could win. It was a foolish ISSUE!
ISSUE II. THE DISTRICT COURT ABUSED ITS DISCRETION BY ADMITTING
              EVIDENCE OF A PRIOR MARIJUANA OFFENSE.
NOTE: This Issue was argued wrongly and could not win, as the
Government easily established in their REPLY BRIEF. IT should have
been argued under INEFFECTIVE ASSISTANCE OF COUSEL, for failing
to present evidence that the prior act could not have transpired.

21

ISSUE III.   THE DISTRICT COURT ABUSED ITS DISCRETION BY DENYING
             A MOTION FOR A MISTRIAL BASED UPON THE PROSECUTOR'S
             ALLEGED VOUCHING DURING THE EXAMINATION OF A CO-
             OPERATING WITNESS.

NOTE: This ISSUE was a loser on it's face, as the Government showed
that Ms. Mendez, did not even cite the event that was supposed to
have been the point of VOUCHING!. It was a loser from the start.

ISSUE IV.    THAT THE PROSECUTOR ENGAGED IN IMPROPER VOUCHING
             DURING REBUTTAL CLOSING ARGUMENT.

NOTE: The Prosecutor quickly killed this ISSUE citing DELGADO
56 F.3d 1363. Any competant Appeal Attorney would have known that
this issue was futile. It was just 'filler' to get paid for doing
a useless Direct Appeal.

[¶57]   In furtherance of the COVER UP of viable ISSUES, Ms. Mendez
thereafter set about to argue a patently frivolous BOOKER ISSUE
and to waste time in the courts --- to be paid additional funds.
The problem with this RIP-OFF of Government funds, is that it
**[DELAYED TIME AND CAUSED PLAINTIFF ADDITIONAL TIME IN PRISON]**,
before Plaintiff could file his Title 28 USC §2255 with true
constitutional GROUNDS that mandate a reversal of his conviction!
This was an abuse of the American Judicial System and robbery
of funds appropriated for appointed attorneys to represent
indigent defendants with viable constitutional issues. To simply
bring patently losing issues that cannot win, is an abuse of the
Judicial System and a violation of the defendant's constitutional
rights --- and --- his CIVIL RIGHTS, as it is also designed to
prolong the defendant's incarceration, by willful intent!

[¶58]   In Plaintiff's Title 28 USC § 2255 GROUND V. Plaintiff
explained the factors of incompetance of his Appeal Attorney.
SEE APP-K(1).   Therein, Plaintiff showed the extra burden that has
been placed upon Plaintiff to prevail in his 2255. As, the FEDERAL
RULES OF CRIMINAL PROCEDURE, RULE 52(a) applies to Direct Appeal
and Rule 52(b) applies to 2255's. The difference being that Rule
52(a) places the burden upon the Government to overcome the ISSUES.
Rule 52(b) is a higher burden, as it is a "PLAIN ERROR STANDARD OF
review and the defendant has the burden to overcome. This reversal
of the BURDEN, highly prejudices a defendant. Had the Appeal Attorney
brought the Constitutional Issues on Direct Appeal, then the
STANDARD of review would have placed the burden upon the Government.

22

In addition, many ISSUES are actually lost for failure to bring
them on Direct Appeal. The Higher Court's have no mercy upon a
Defendant just because his attorney did not bring the Issues. Many
of inmate in prison suffers due to this quirk in the law. Defendant's
are systematically punished for their Appeal Attorney's incom-
petence. The QUESTION that raises the level to that of a LIABILTY,
is whether or not the Appeal Attorney --- deliberately ---
refused to attack the Trial Counsel or the Government! As many
Attorneys make their living from Court Appointments --- they are
reluctant to attack the Judge or the Prosecutors or even their
fellow Attorneys --- who also rely upon Court Appointments to pay
their bills! That is the American Judicial System in a NUTSHELL!
Thus the quentessential question in this case, is,can Plaintiff
substantiate the WILLFULL MENS REA and SCIENTER of Ms. Mendez to
COVER UP for the 'FOUL PLAY' of the Prosecutors and of Plaintiff's
Trial Attorney and for the other conspirators set forth herein?
Plaintiff, asserts that the RECORD establishes the willful intent
to cover up the FOUL PLAY and the Constitional Violations of
Plaintiffs rights of due process and his Civil Rights, not to be
deprived of his LIBERTY by 'CORRUPTION' of the American Judicial
System --- for whatever reasons, financial or ego or to advance
in respective fields.
[¶59]    Plaintiff, hired a Paralegal Agency, that is supervised by
a Retired Criminal Attorney that practiced in the 9th Circuit
for over 25 years. The Paralegals began  without a complete Trial
Transcript, as Ms. Mendez did not even have a complete trial
transcript from which to perfect her Direct Appeal.With that said,
we must go the the ISSUES/GROUNDS that Ms. Mendez refused to bring
in her Direct Appeal. Beginning with the FACT, that she refused to
bring any ineffectiveness of Trial Counsel. In Plaintiff's 2255,
it is separated by PRIMARY GROUNDS, with SUB-GROUNDS. For instance
GROUND I. is INEFFECTIVE REPRESENTATION OF TRIAL COUNSEL. It has
FIFTEEN SUBGROUNDS. All of which are backed up by CASE LAW which
provided REVERSALS for previous defendants with the same GROUNDS!
Note that all of the GROUNDS are 'PLAIN IN THE RECORD' and as such
must be brought on Direct Appeal! GROUND II. is PROSECUTORIAL MIS-
CONDUCT. Their are TEN SUBGROUNDS. All of which are, also backed
up by CASE LAW, and required reversals of previous defendants.

23

GROUND III is a BRUTON ISSUE. GROUND IV was the constitutional
ERROR on the part of the Judge for denying Plaintiff his right to
his OWN counsel to represent him during the Government's 'opening'
of their closing arguments. The Supreme Court in GONZALEZ-LOPEZ
U.S. No. 05-352, (6/26/06) just ruled that this GROUND mandates an
automatic reversal of Plaintiff's case. SEE APP-L(1)-(4) Plaintiff,
also attacked the defrauding of the Grand Jury, which was required
to be brought on Direct Appeal, in his GROUND VI. Plaintiff, also
added two addtional Grounds that [ALL] of the attorneys plead him
guilty by stipulation that he possessed the JOHN JACKSON CELL PHONE
and that Plaintiff picked up five of the Co-conspirators in his
truck. Both fabrications of the Prosecution. All total Plaintiff
brought 30 GROUNDS that Ms. Mendez refused to bring in her Direct
Appeal. Instead, she choose to COVER-UP for the Prosecution and
protect her fellow Attorneys from being found to be ineffective.
She chose to simply submit a PATENTLY FRIVOLOUS DIRECT APPEAL to
[**COVER-UP**] the [CONSPIRACY to deprive Plaintiff of his LIBERTY]!
She then played the Judicial System to gain more DOLE for a
stupid BOOKER ISSUE that had as much chance as a snowball in hell
to win. She became an ACCESSARY AFTER THE FACT to AID and ABET the
Conspirators to get away with corrupting the American Judicial
System and to willfully and intentionally with full mens rea
and scienter, deprive Plaintiff of his freedom and to prolong
Plaintiff's incarceration --- in order to cause plaintiff a HIGHER
BURDEN to win his case on a Collateral Challenge, and to cause
Plaintiff to degrade in his health to the point of not being
able to live through his sentence --- or to be so deprived of
adequate medical treatment to shorten Plaintiff's lifespan upon
his return to his freedom.
[¶60] Please see APP(A(7)-(10) for the headers to the GROUNDS that
plaintiff brought in his 2255. They are all jurisdictionally ripe
for review in the Court of Appeals on a DIRECT APPEAL! Willfull
refusal to take the ISSUES/GROUNDS on Direct Appeal [WAS A COVER-UP
of the CONSPIRACY to deprive Plaintiff of his constitutional rights
under the 5th and 6th Amendments and his CIVIL RIGHTS for the will-
full intent to deprive Plaintiff of his liberty and his health and
wellbeing. It was also obstruction of justice and the joining of
the conspiracies herein as an accessary after the fact.

24

CLAIM NUMBER FOURTEEN:   [FOURTEENTH CAUSE OF ACTION]

[¶61]   [THE PRIMARY ELEMENT OF THE GENERAL CONSPIRACY]: The [core] 'element', to the PRIMARY CAUSE OF ACTION of the CLAIMS, per se, is the 'AGREEMENT' to 'STIPULATE' to Plaintiff's 'GUILT' of being in possession of the John Jackson Cell Phone and making [ALL] of the calls on that phone --- weeks before the arrests of the 24th of February of 2003 --- and expressly on the date of the arrests on February --- by [ALL] of the Attorneys of record and by the Judge validating the 'STIPULATION' to the jury as being a 'material fact'; which caused the deprivation of Plaintiff's LIBERTY!

[¶62]   What everyone fails to comprehend, is that this consolidated agreement was premised upon FRAUD and PERJURY and OBSTRUCTION OF JUSTICE and the CORRUPTION of a Federal Criminal Trial. In CLAIM NUMBER TWO, Plaintiff established the HARM AND PREJUDICE of the AGREEMENT(S) that Plaintiff made calls weeks prior to the arrests on the 24th of February. No evidence supported this FRAUD. No one questioned it. Plaintiff's Attorney, Mr. Gerson was hiding out in the bathroom because he knew that he could not attend the trial during these false allegations and not object --- which he could not do becuase he had STIPULATED to Plaintiff's guilt and prevented Plaintiff from taking the witness stand to [REFUTE] the FRAUD and claim his absolute innocence of ever possessing the John Jackson Cell Phone. There was no valid 'CHAIN OF CUSTODY' to substantaite that Plaintiff had possession of the CELL PHONE. It was simply 'STIPULATED TO' --- without Plaintiffs permission or choice.

[¶63]   The foregoing stipulation --- was then superimposed upon the jury by the Court's INSTRUCTION --- that 'STIPULATIONS' --- are deemed to be FACT and do not need to be addressed or de-bated. As learned Attorneys at Criminal law, [ALL] of these Attorneys were fully aware that they were PLEADING PLAINTIFF GUILTY of the charges in the INDICTMENT, with their STIPULATION! This was a KNOWING AGREEMENT to insure that Plaintiff would be found GUILTY --- as the jury had no other option! They had to follow the Court's instruction on the STIPULATION of his guilt. Thus, the Court imposed the GUILT upon Plaintiff from the con-spiracy of [ALL] of the Attorneys of record.

25

## INJURY

[¶64]   The [INJURY], per se, is manifested from the Conspiracy to
violate Plaintiffs CIVIL RIGHTS as set forth and defined in Title
28 U.S.C. §1331 (BIVENS) and Title 18 USC §§ 241,242 et seq for
violating the rights of a DISABLED PERSON. As set forth in the
[SUMMARY OF THE CLAIMS](Page 1)   this was/is a conspiracy to
deprive Plaintiff of his LIBERTY and to cause the deprivation of
adequate Medical Treatment as promulgated in JETT V. PENNER
439 F.3d 1091. Whereupon Plaintiff has suffered DELIBERATE INDIFF-
ERENCE from the Bureau Of Prisons Mecial Treatment in comparison
with the Medical treatment that would have been and would be
afforded to Plaintiff for his dire medical conditions. That this
forced inadequacy of Medical Attention --- is the direct result
of Plaintiff's illegally contrived incarceration. In addition to
these factors, Plaintiff has been abused by the manner of control
that Mr. Gerson has had over the Court's to cause Plaintiff to be
detained in horrendous and horrific conditions of confinement,
such as weeks in a small closed door room with 3 other men and
having to sleep on the floor underneath a a double stacked bunk.
And at times in a position near the communal toilet, with sprays
of urine about. All for the sake of Mr. Gerson to have Plaintiff
brought back to court so that he could get another shot at
trying to get to represent Plaintiff on a DIRECT APPEAL--- wherein
he could [COVER UP] the foul and corrupt means whereby that they
illegally incarcerated Plaintiff.
[¶65]   After the Illegal Trial and conviction, Plaintiff was then
forced to have an APPOINTED ATTORNEY, Ms. Mendez. She set about to
COVER UP for [ALL] of the foul misconduct of everyone involved in
the CONSPIRACY to deprive Plaintiff of his CIVIL RIGHTS. In the
process of doing this --- she willfully and intentionally --- set
about to cause extended DELAYS in the Judicial Process(s). These
delays caused extended prison time for Plaintiff and caused
material evidence to grow stale.
[¶66]   Finally, the emotional  distress of Plaintiff being an
innocent man, and of losing his marriage and the emotions of his
family, add to the punitive conditions imposed upon Plaintiff which
will surely lesson his normal life expectancy!

## SPECIFIC REQUEST FOR COMPENSATORY RELIEF:   SECTION I

[¶64]   Whereupon the following Defendants, for their actions to deprive Plaintiff of his LIBERTY and to cause and inflict Emotional Distress and to cause Plaintiff's health to decline and suffer injuries may take this option in SECTION I. , to compensate Plaintiff, within 60 days of the service of this complaint, by paying to Plaintiff the sum of $100,000 individually and independantly. Defendants:

(1)   AUSA CARLOS B. CASTILLO
(2)   AUSA EDWARD SANCHEZ
(3)   DEA AGENT RICK MURPHY
(4)   PAUL A. GERSON
(5)   BRUCE R. LEHR
(6)   GEORGE J. VILLA
(7)   ANTHONY CARBONE
(8)   CURT D. OBRONT
(9)   ALBERTO FUENTES
(10)  METRO PCS CELL PHONE COMPANY
(11)  CINGULAR WIRELESS CELL PHONE COMPANY
(12)  NEXTEL CELL PHONE COMPANY
(13)  MARISA TINKLER MENDEZ

## SPECIFIC REQUEST FOR COMPENSATORY RELIEF:   SECTION II

[¶65]. Whereupon the foregoing Defendants     set forth in SECTION I. may settle this case, after 60 days of service for the sum of $2,000,000.00 each, by admitting to their individual violations of Plaintiffs Consitutional  and Civil Rights.

## SPECIFIC REQUEST FOR COMPENSATORY RELIEF:   SECTION III

[¶66]   [IF], Plaintiff wins a verdict of the conspiracy of the foregoing Defendants in a CIVIL JURY TRIAL, then Plaintiff seeks treble damages of $6,000,000.00 each and $4,000,000.oo each for punitive damages. However, if Plaintiff dies in prison from his illegal incarceration then Plaintiff seeks $100,000,000.00 for his children to be divided equally--- or if Plaintiff's health has  deteriorated to such a degree that his lifespan  is reduced.

## VERIFICATION

[ 70]    I, Elvester Trotter, herein verify that I have read the
foregoing CLAIMS and that I understand the content thereof and
that I agree with the premises set forth herein which validate
the violation of my Constitutional and Civil rights:
Signed pursuant to Title 28 USC §1746(2)

## CERTIFICATE OF SERVICE

[ 71]    I, Elvester Trotter, herein certify that I have mailed the
foregoing CIVIL COMPLAINT with two copies and one original to the
Clerk of the Court for the United States District Court in the
Southern District of Florida and copies to the follwoing defendants:
Signed _____ DATE _____

AUSA CARLOS B. CASTELLO
99 N. E. 4th St.
Miami, Fl. 33132

Attorney Paul A.Gerson
2650 Biscayne Boulevard
Miami, Fl. 33137

Attorney Curt D. Obront
200 S. Biscayne Boulevard
Suite 2940
Miami, Fl. 33131

Attorney Bruce R. Lehr
1401 Brickell Avenue
Suite  810
Miami, Fl. 33131

Attorney George Vila
1221 Brickell Avenue
Suite 1020
Miami, Fl. 33131

Attorney Anthony Carbone
542 SW 12th Avenue
Miami, Fl. 33136

Attorney Marisa Mendez
901 Ponce De Leon Blvd.
Coral Gables, Fl. 33134

AUSA EDWARD SANCHEZ
99 N E. 4th St.
Miami, Fl. 33132

DEA AGENT RICK MURPHY
% AUSA CARLOS CASTELLO
99 N. E. 4th St.
Miami, Fl. 33132

Alberto Fuentes
% Attorney Paul A. Gerson
2650 Biscayne Blvd.
Miami, Fl. 33137

METRO PCS (LEGAL DEPARTMENT)
POST OFFICE BOX 60119
DALLAS TX. 75360

NEXTEL  (LEGAL DEPARTMENT)
2001 Edmund Holley Drive
Respon, VA. 20191

CINGULAR WIRELESS (LEGAL DEPARTMENT)
5565 Glenridge Connector
Atlanta, Ga. 30342